475 So.2d 394 (1985)
STATE of Louisiana
v.
Leo JOHNSON.
No. 85 KA 0022.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Rehearing Denied September 11, 1985.
Writ Denied November 15, 1985.
*395 Leon A. Picou, Jr., Dist. Atty., St. Francisville, for plaintiff.
*396 Clayton M. Perkins, Jr., St. Francisville, for defendant.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
Leo Johnson, defendant, was charged by grand jury indictment with the second degree murder of his estranged wife, Opal Johnson, a violation of LSA-R.S. 14:30.1. Defendant pled not guilty, and following trial by jury, was convicted as charged. The trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
From this conviction, defendant appeals urging five assignments of error:
1. The trial court erred when it denied defendant's motion for mistrial following an outburst in the courtroom.
2. The trial court erred when it allowed photographs of the deceased's body (state exhibits 3 and 4) into evidence over defense objection.
3. The trial court erred when it would not allow proffered psychiatric testimony to be heard by the jury in the absence of a defense plea of not guilty by reason of insanity as "heat of passion" was an essential element of defendant's manslaughter defense.
4. The trial court erred when it allowed new evidence to be introduced through rebuttal testimony of Ray Johnson concerning the substance of a collect telephone call made by the deceased to defendant.
5. The trial court erred when it denied defendant's motion for a new trial.
On November 6, 1983, a West Feliciana Sheriff's deputy enroute to investigate the death of a woman who had been shot in front of a St. Francisville super market was approached by defendant. Defendant advised the officer that he had just shot a woman and was the individual officers must be seeking. In reliance on that statement, defendant was placed under arrest and two guns were taken from his car. One of the weapons was later determined by a firearm's expert to be the murder weapon.
In addition, crime scene investigation revealed that the homicide victim was defendant's estranged wife. The victim had been shot three times at close range in the presence of several eye witnesses.

ASSIGNMENT OF ERROR NO. 1:
Defendant, relying on LSA-C.Cr.P. art 775, contends that the trial court erred in denying defendant's motion for mistrial requested because of an outburst by a spectator. The record reveals that during opening statement by the state, an unidentified spectator made an "outburst in the courtroom." This individual, not identified, was immediately escorted from the courtroom and did not create any further disturbance of these proceedings. The state disclaims any responsibility for the outburst, and the trial court properly admonished the jury to disregard the disruptive conduct. Nevertheless, relying on LSA-C.Cr.P. art. 775, defendant argues that he was so prejudiced by this conduct that a mistrial should have been granted.
Article 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized under articles LSA-C.Cr.P. 770 or LSA-C. Cr.P. 771. Mistrial is a drastic remedy. It has been held that when the conduct does not fall within the mandatory mistrial provisions, the judge has the sound discretion to determine whether the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. State v. Wright, 441 So.2d 1301 (La.App. 1st Cir. 1983). We find no abuse of discretion in the denial of the requested mistrial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
By means of this assignment, defendant contends that the trial court committed error when it overruled defendant's objection to admission of two photographs (state exhibits 3 and 4) depicting the victim as she *397 was found dead at the crime scene. Defendant argues that the photographs are unduly gruesome.
The admission of allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Brogdon, 426 So.2d 158 (La.1983). Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).
After examining the contested photographs, we find no error in the trial court's ruling that their probative value outweighs any prejudicial effect. Accordingly, these photographs were admissible.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3:
By this assignment, defendant contends that the trial court erred in refusing to allow proffered psychiatric testimony[1] to be heard by the jury in the absence of a defense plea of not guilty by reason of insanity, as "heat of passion" was an essential element of defendant's manslaughter defense.
The proffered testimony in the instant case characterized defendant as an individual with "paranoid trends" who "tends to distort reality." It was Dr. Silva's opinion that defendant's altered perception of reality precipitated the incident. See footnote one. An expert witness must state the facts upon which his opinion is based, in this instance a mental defect which distorts reality. See LSA-R.S. 15:465.
In State v. LeCompte, 371 So.2d 239 (La.1978) the Supreme Court held, that under LSA-C.Cr.P. art. 651, evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity. Moreover, a mental defect or disorder short of insanity cannot serve to negate specific intent and reduce the degree of crime. LSA-C.Cr.P. art. 651 provides in pertinent part: "When a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible."
Defendant submits that article 651 is unconstitutional under the holding of Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), wherein the United States Supreme Court recognized the strict application of otherwise valid evidentiary *398 rules may result in the denial of due process.[2]
In Washington v. Texas, defendant contended that he was denied his right to compulsory process for obtaining witnesses because of a Texas statute which provided that one co-conspirator could not testify on behalf of the other. In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the United States Supreme Court recognized that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process...." 93 S.Ct. at 1046.
In State v. Burton, 464 So.2d 421 (La.App. 1st Cir.1985), we noted, in upholding the constitutional validity of LSA-R.S. 15:482 against a similar attack, that the right to present evidence in defense of charges must be balanced against competing concerns in the interest of a fair trial. In this instance, it is crucial to insure that the jury's attention is focused on the alleged provocation, viewed objectively, and defendant's conduct judged accordingly. As the Louisiana Supreme Court noted in State v. Walker, 50 La.Ann. 420, 23 So. 967 (1898): "All the writers lay down the doctrine that the assault or provocation must be such as would stir the resentment of an `ordinary' man in order to reduce the crime to manslaughter." Thus that a defendant possesses some peculiar mental or physical characteristic, not possessed by the ordinary person, which caused him in a particular case to lose his self-control, is not to be considered in measuring the adequacy of the provocation. See W. LaFave & A. Scott, Criminal Law, Ch. 7, § 76 (1972) at pages 572, et seq.
Accordingly, we do not find that the exclusion of this evidence resulted in the deprivation of a fair trial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4:
Defendant complains that the trial court erred in allowing certain rebuttal evidence to be admitted over his objection.
Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by an adverse party and may be used to strenghthen the state's original case. LSA-R.S. 15:282; State v. Huizar, 414 So.2d 741 (La.1982). The determination of whether evidence is rebuttal and hence, admissible, is addressed to the sound discretion of the trial court. State v. Aspin, 449 So.2d 49 (La.App. 1st Cir.1984).
In the instant case, defendant testified that he loved and missed his wife and had never threatened to kill her. Defendant also testified that he received a collect telephone call from his wife while she was visiting her brother in New York State and denied having made any threat on her life during that conversation.
In rebuttal, Ray Johnson, the son of Leo Johnson and Opal Johnson, testified that he answered the telephone when the person to person collect call was received from his mother approximately one and one-half weeks prior to her death. Ray Johnson further testified that he heard his father say that "if you put them white folks on me one of us is going to hell." Following his mother's return to St. Francisville, she explained to Ray that defendant had stated that one of them would go to hell if she asked Sheriff Bill Daniel to keep defendant from bothering her.
We do not find that the trial court did abuse its discretion in admitting this evidence. The testimony of Ray Johnson was properly offered in rebuttal.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5:
By means of this assignment, defendant urges that the trial court erred by failing to grant defendant's motion for new trial based on two grounds.
*399 The second ground is made pursuant to LSA-C.Cr.P. article 851(5). Where the defendant's motion for new trial is based on LSA-C.Cr.P. article 851(5), allowing the trial court to consider the weight of the evidence, the granting or denial of a new trial is not subject to review by the appellate courts. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984).
Only the weight of the evidence, and not the legal insufficiency of the evidence, the first ground urged herein, can be reviewed by the trial court in a motion for new trial under LSA-C.Cr.P. art. 851. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). If the trial court finds the evidence legally insufficient, it must do so under LSA-C. Cr.P. art. 821. Korman, supra, at 1101.
Defendant contends that the evidence is insufficient to establish second degree murder, and the evidence presented would have justified only a verdict of manslaughter.
The standard of review for the consideration of a sufficiency claim made statutory by LSA-C.Cr.P. art. 821 is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
The record reveals that defendant and the victim had lived apart during much of the six month period immediately preceding the victim's death.
At the time of the shooting, the victim was in the company of her sons, Ray and Ernest, her adult daughter, Priscilla, and Priscilla's boyfriend, Lilton Anthony, Jr. According to their testimony, Anthony parked his pickup truck in front of a small grocery store. The victim was standing by the truck, having just finished using a pay telephone, when defendant drove into the parking lot. At defendant's request, the victim walked to his car and opened the front passenger door. Anthony testified that he heard the victim tell defendant that "she didn't have nothing to say to him, that the law said that she didn't have to say anything to him." Anthony could not, however, hear what defendant was saying to the victim. As the victim closed the car door and started running toward the grocery store entrance, defendant got out of his car. He followed the victim, firing his gun three times. Priscilla testified that defendant said "don't run from me," as he exited his car in pursuit of the victim. She too saw defendant fire three times while aiming at the victim. In response to hearing the first shot, Keith Pratt, a grocery store employee, peered out the store window. Pratt saw defendant fire the second shot and then move still closer to the victim firing the third shot while holding the gun about twelve to eighteen inches from the victim's head. Pratt also noted that defendant appeared calm after the shooting.
Leo Johnson took the stand on his own behalf, however, his testimony was often confused and self-contradictory. Contrary to the testimony of Priscilla Johnson, defendant maintained that he and the victim had an acceptable home life. On the evening in question, he was "lonely" and had a lot of "pressure on his mind." Defendant testified that as the victim left his car, she said, "if I went back home it would be my last night there." Although defendant testified that he thought his wife would return to live with him even after their conversation, he felt upset as she left the passenger side of his car. He admitted that he fired his gun three times but did not know that the bullets were hitting anybody.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(1). Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances of the transaction. LSA-R.S. 15:445. The evidence showing that defendant fired his gun at the victim three times at close range in the area of her neck and head is sufficient to prove he had the specific intent to kill or to inflict great bodily harm. See State v. Mullins, 464 So.2d 459 (La.App. 1st Cir. 1985).
*400 Moreover, the record does not support defendant's contention of provocation. "Heat of blood" and "sudden passion" are not elements of the offense of manslaughter but are mitigating circumstances which may reduce the grade of a homicide. State v. Tompkins, 403 So.2d 644 (La.1981).
The jury verdict indicates that it accepted the witnesses' version of the events and rejected defendant's confused testimony. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir.), writ not considered, 456 So.2d 161 (La.1984).
Accordingly, this assignment of error is without merit.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The proffered testimony of Dr. Silva provided in pertinent part:

Concerning his uh, the state of his mind at the time of the commission of the crime I had some concern in that area to (sic). He's uh, he didn't seem to be completely aware of the seriousness of the charges against him. He knew the charges, murder, on the other hand he somehow expected that he was going to be released from jail. Uh, also uh I was concerned to (sic) because when I asked him if he'd uh not killed his wife he said he didn't know and then his answer was he was not there when she died, and this was kind of a strange answer. In general I felt like uh, uh, Mr. Johnson was a rather guarded uh suspicion (sic) man of uh, slightly below average intelligence who uh, uh at the that time I felt like he acted rather uh, explosive way. He'd tend to misinterprete (sic) some of the remarks hat his wife made to him and uh he uh I feel like this was what triggered the, the incident that occurred at that time. I felt like he had some paranoid trends and he somehow tend to uh, uh distort reality. He'd uh, he's not a distortion to the reach the point of a complete break away from reality which you find in a psychiotic (sic) person but it is distortion that you find, for example that I gave him, his answer if I killed her I was not there when she died. Well, he knew she had died but the assumption was maybe somebody else had done it and he was getting blamed for it. Uh, also some of the comments concerning his wife uh, uh statements prior to death, he said if you come to the house it will be your last night, he immediately reacted as it was an immediate threat to his life, like something was going to be done to him that she was really threatening to kill him. Uh, so, because of these things I felt his semi-distortion of realty (sic) in a paranoid way uh maybe increase his suspicion. (Emphasis added.)
[2] See also, State v. Roussel, 424 So.2d 226 (La. 1982).