496 So.2d 624 (1986)
STATE of Louisiana
v.
Clifton C. DUCKSWORTH.
No. 86 KA 0007.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*627 David J. Knight, Joseph Tosterud, Covington, William Campbell, Jr., New Orleans, for the State.
Ronald J. Rakosky, John Craft, New Orleans, for appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
*628 SHORTESS, Judge.
Clifton C. Ducksworth (defendant) was charged by grand jury indictment with the second degree murder of Daniel R. Viner (Viner), in violation of LSA-R.S. 14:30.1. Defendant pled not guilty and not guilty by reason of insanity. Following trial by jury, he was convicted as charged. The trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant appeals and urges twelve assignments of error. Assignments of error numbers eleven and twelve were not argued or briefed and are thereby considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS:
During the afternoon of July 1, 1984, St. Tammany Parish Sheriff's Deputy Joe Landry was dispatched to a Lacombe ball park to investigate a shooting. On arrival, he discovered a seriously injured black male, later identified as Viner, lying on the ground. Viner was transported to a local hospital where he died without regaining consciousness. An autopsy performed by Dr. Charles Crumpler revealed that Viner's death was caused by internal bleeding occasioned by three gunshot wounds to his chest, left hand and left thigh. Dr. Crumpler felt that the wounds, all with points of entry from the anterior aspect of defendant's body, could have been caused by only two bullets.
At the site of the incident, Deputy Landry retrieved the weapon used to kill Viner. When recovered, the gun had three spent shells and two live rounds. Events leading to Viner's death were reconstructed by interviewing various individuals who were present at the park for a softball game between the Lacombe A's and the Slidell Dodgers. Many people witnessed at least a portion of the incident.
Jules Jones, the assistant manager of the Slidell Dodgers, testified that he knew both Viner and defendant; that Viner was the manager of the Dodgers; that he and Viner were seated next to each other on their team bench working on the team lineup; that defendant approached and shouted, "I'm going to kill you"; that after the first shot was fired, he observed a spot of blood on Viner's chest; that as Viner got up from the bench and tried to run, defendant said, "run, nigger run" and fired "a couple more" times.
Will Jones, III, the thirteen-year-old nephew of Jules Jones and Eric Jones, testified that he noticed that defendant had a gun in his pocket before the shooting; that he proceeded to tell Eric Jones about defendant's weapon; that while talking with Eric, he heard the first shot fired; that he and Eric turned and saw Viner running, at first in a backwards manner, from his team dugout and that Viner was unarmed.
Eric Jones corroborated Will's testimony and added that he had observed defendant seated on the Slidell team bench shortly before the shooting incident.
Alvin Charles Trullier, another Slidell player, testified that Viner and defendant were both seated on the Slidell team bench, with other individuals seated between them, prior to the shooting; that he heard defendant yell, "run"; that two shots were then fired; that Viner, unarmed, backed away and then fell to the ground past third base.
Two other Slidell Dodgers, Irving Vance and Malcolm Paul Pichon, also testified. They both saw defendant fire at Viner. When Vance heard the first shot, he looked up and saw defendant standing in front of the Slidell team bench; then, as Viner jumped up and ran, defendant aimed his gun and shot again.
Tommy Lee Jones, one of the Lacombe A's, testified that he did not witness the actual shooting; that he did converse with defendant a short time before the shooting; that he asked defendant if he had come to watch his team get beat by Lacombe; that defendant responded by saying he had come to kill someone; that when he asked defendant to identify the intended victim, defendant responded, "[H]e knows"; then defendant asked him if he had ever killed *629 anyone during his tour of duty in Viet Nam and, if so, if he would describe how it felt to take a human life.
Sarolo Palmer, also one of the Lacombe A's, testified that he was acquainted with both Viner and defendant; that after hearing the first shot fired, he observed Viner run from the opposing team's dugout and "back pedal" away as he faced defendant; that after the shooting, he saw defendant in the parking lot adjacent to the ball park; that defendant calmly placed the weapon used to kill Viner on the ground and remarked: "When the sheriff comes tell him Clifton Ducksworth did it; I'll be at my father-in-law's house."
Defendant was arrested at the home of his father-in-law, Poleite Baham, shortly after the incident. Baham testified that, when defendant arrived, he acknowledged that he had just shot someone and remarked: "Well, everything is going to be all right now. He can mess with me, but don't mess with my family."
Defendant took the stand in his own behalf, admitting that he fired the shots which killed Viner. Defendant maintained that he had not spoken with Viner or with Tommy Lee Jones on the day of the shooting. His justification for the shooting was that Viner "gave him the bird" and then reached his hand back, leading him to believe that Viner was going for his gun.
After defendant testified about the perceived hostile act by Viner, the trial court allowed defendant and various defense witnesses to describe in detail prior occasions when Viner displayed a propensity for hostile, threatening, and aggressive behavior toward defendant.
Defendant and Viner grew up in the same Slidell neighborhood. In January of 1984, defendant's wife, Lillian, gave birth to a child. After being present at the birth of his daughter, defendant went to a sweet shop in his old neighborhood to celebrate. While there, defendant and Viner argued over a pool game, and a physical altercation took place. Before it was over, Viner armed himself and pistol-whipped defendant.
After the encounter at the sweet shop, defendant testified that he heard others say that Viner was going to get him. Defendant also testified that Viner bragged about having an affair with his wife, saying that he was the father of defendant's infant daughter.
The evening before the shooting, defendant, his wife, and infant daughter attended a wedding reception. As defendant was engaged in conversation in another part of the room, Viner approached Lillian Ducksworth and kissed her. Defendant confronted Viner, pushed him, and ordered him not to touch "me or anything that's mine." As Viner started back toward him, defendant turned and ran because he was holding his daughter and did not want her to get hurt. Despite reassurances from his wife that she did not know Viner and that she was not involved in a relationship with him, defendant was troubled by the incident at the party and brooded over it for the rest of the night.
We will deal with defendant's assignments of error in the order they were briefed.

ASSIGNMENT OF ERROR NUMBER NINE:
Defendant contends that the trial court erred when it denied his motion for post verdict judgment of acquittal filed pursuant to Louisiana Code of Criminal Procedure article 821. As grounds for acquittal, defendant argues that the evidence failed to establish that the killing was not justified as an act of self-defense. In the alternative, defendant urges the court erred by failing to modify the verdict and render a judgment of manslaughter as the killing was the product of Viner's conduct, which constituted sufficient provocation to deprive an average person of his self-control and cool reflection.
When a defendant claims self-defense, the State has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Rosiere, 488 So.2d 965 (La.1986).
*630 LSA-R.S. 14:20, in pertinent part, provides: "A homicide is justifiable: (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger...." However, an agressor or one who brings on difficulty, as a general rule, cannot claim the right of self-defense unless he withdraws from the conflict in good faith and indicates his intention of abandoning the difficulty. LSA-R.S. 14:21. The relevant inquiry on appeal is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. Rosiere, 488 So.2d at 968-969.
The testimony of Jules Jones and Tommy Lee Jones in particular, together with the other circumstances set forth in detail above, could certainly lead a rational trier of fact to the conclusion that this homicide was not necessary to preserve defendant's life. Moreover, it undisputed that the unarmed Viner attempted to flee after defendant commenced firing. Such conduct negated justification for the continued use of deadly force, if any ever did exist.
This shooting cannot be labeled self defense. The law will not permit even a harassed individual to take the law into his own hands, track down his enemy, assault him with a pistol, and then claim justification for a homicide which follows because of prior threats.
We find that the State met its burden of proof; that is, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that defendant did not act in self-defense.
With respect to defendant's alternative argument, we note that manslaughter is a lesser included responsive offense to second degree murder. LSA-C.Cr.P. art. 814(A)(3). However, a trial court may modify the verdict and render a judgment of conviction on a lesser included responsive offense only if it finds the evidence, viewed in a light most favorable to the State, supports only a conviction of that responsive offense. See LSA-C.Cr.P. art. 821(C).
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31(1). Nevertheless, "[p]rovocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed." LSA-R.S. 14:31(1). See also State v. Tompkins, 403 So.2d 644 (La.1981).
The Legislature has defined the offense of manslaughter without a detailed enumeration of what shall or shall not be considered adequate provocation. Thus, the adequacy of provocation and time for cooling of blood are primarily jury questions. See Reporter's Comments to LSA-R.S. 14:31; State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985).
In reviewing this jury verdict, we must determine whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986).
The actions of defendant and Viner were described in detail by various individuals who were present at the ball park during the afternoon in question. There was no verbal exchange between them prior to the shooting; and none of the witnesses saw Viner with a weapon. Furthermore, it is undisputed that Viner tried to flee immediately after defendant began firing.
Expert testimony, offered by the defense, characterized defendant as an individual with "paranoid trends." However, *631 the fact that a defendant possesses some peculiar mental or physical characteristic, not possessed by the ordinary person, which might cause him in a particular case to lose his self-control, is not to be considered in measuring the adequacy of the provocation. See State v. Johnson, 475 So.2d 394 (La.App. 1st Cir.1985), writ denied, 478 So.2d 143 (La.1985).
Considering all surrounding circumstances and conditions, a rational trier of fact might well have concluded that, despite some evidence of provocation on prior occasions, defendant acted with deliberation and reflection and not from heat of passion at the time of the actual homicide.
A rational trier of fact, viewing the evidence in the light most favorable to the State, might well have found that mitigatory factors, which reduce a homicide from second degree murder to manslaughter, were not established by a preponderance of the evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends that the trial court erred by denying defendant's request for production of or in camera inspection of prior statements made by State witnesses Will Jones, III, and Jules Jones.
After two State witnesses testified, defendant moved to be provided with any prior statements made by any State witness to aid in conducting cross-examination. In the alternative, defendant requested that the trial court order production of the statements for an in camera inspection. The trial court denied the defense motion.
However, while evaluating defendant's motion for new trial, the trial court reconsidered its position and, out of an abundance of caution, ordered the State to produce the statements of its witnesses, other than their testimony before the grand jury, for an in camera inspection. The purpose of the inspection was to determine whether the statements were inconsistent with their trial testimony or whether they contained any exculpatory evidence.
After reviewing the statements of Poleite Baham, Will Jones, III, Jules Jones, Malcolm Pichon, Alvin Trullier and Elaina Viner, the trial court found that they were not inconsistent with the testimony given at trial; that they contained no information favorable to defendant; and that they were not material to defendant's guilt or innocence. The statements were then sealed and filed in the record for reference on appeal.
Under the United States Supreme Court decision of Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State, upon request, must produce evidence that is favorable to the defendant where it is material to guilt or punishment. This rule also includes evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). See also United States v. Bagley, ___ U.S. ___, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
Where a specific request is made for such information and the subject matter of such a request is material, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial court. See State v. Ates, 418 So.2d 1326 (La.1982).
Since Jules Jones was a chief prosecution witness, and his testimony went directly to the issue of guilt of defendant, an in camera inspection of statements made to the district attorney and law enforcement officers was warranted. However, the trial court corrected any error by making the relevant determinations in conjunction with defendant's motion for new trial.
We, too, have reviewed the statements and find that they do not contain material inconsistencies with trial testimony or other evidence favorable to defendant.
*632 In addition, we are not persuaded by defendant's alternative argument that in camera inspection should have included the grand jury testimony of those witnesses. In the instant case, there is not sufficient showing by defendant to impinge upon the grand jury secrecy. See LSA-C. Cr.P. art. 434; State v. Ates, 418 So.2d at 1329-1330; State v. Feet, 481 So.2d 667 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986).
Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE:
Defendant contends that the trial court erred by restricting the cross-examination of State witness Poleite Baham, defendant's father-in-law.
During that cross-examination, Baham testified that defendant came to his residence immediately after leaving the ball park and that defendant repeatedly remarked: "Everything is all right now." When asked if defendant had provided any detail about the shooting incident, Baham responded negatively. Immediately thereafter, defense counsel sought to provide an interpretation of defendant's remark by asking Baham if defendant "was in effect saying that he___" That question was interrupted by the State's objection, which was sustained by the trial court. Defense counsel then rephrased the question, thereby asking the witness if he had heard defendant say that he had no choice but to shoot Viner. In response, the witness stated that all he could recall was the repeated quote: "Everything is going to be all right now."
In brief, defendant urges that sustaining that objection was error because leading questions are usually permitted during cross-examination. We agree that leading questions are usually permitted during cross-examination but find that defendant's question was misleading rather than leading. Defendant sought not only to suggest an answer but also to evoke the witness's assent to the questioner's inferences from or interpretations of the facts proved or assumed. See McCormick, Evidence, Ch. 2, § 7 at 14 (Cleary Ed.1984); State v. Kahey, 436 So.2d 475 (La.1983). Accordingly, we find no error in the trial court's ruling. Moreover, the record reveals that defendant was fully able to explore any relevant information within the knowledge of this witness.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
Defendant contends that the trial court erred by restricting direct examination of defendant and of defense witnesses Yvonne Baham and Deon Jackson.
Yvonne Baham, defendant's mother-in-law, was called as a defense witness. Ms. Baham testified that Lillian Ducksworth received a telephone call from defendant immediately after the shooting. In response to questioning by defense counsel, Ms. Baham testified that her daughter appeared hysterical as she spoke with defendant. Thereafter, defense counsel asked the witness to repeat what Lillian had said after finishing her telephone conversation with defendant. However, before she could respond, the State objected; and that objection was sustained by the trial court.
In brief, defendant suggests that the witness's answer would have fallen within the excited utterance exception to the hearsay rule. The record does not clearly show whether the comment would have been a spontaneous reaction to the event or, rather, the result of reflective thought. See State v. Henderson, 362 So.2d 1358 (La.1978). However, any error in the ruling was harmless. Lillian Ducksworth later took the stand and testified in detail about the instant telephone conversation.
Deon Jackson, defendant's close friend, was called to testify about the altercation between defendant and Viner at the sweet shop in January of 1984. Jackson was also allowed to testify about rumors he had heard that Viner was telling *633 others that he was "going to get" defendant. However, when defense counsel asked the witness about rumors concerning a possible relationship between Viner and defendant's wife and child, the State objected. That objection was sustained by the trial court.
Through the testimony of Jackson, defendant was allowed to fully explore Viner's alleged dangerous character or threats against defendant. Such testimony was properly admitted pursuant to LSA-R.S. 15:482. However, the trial court did not abuse its discretion by curtailing questioning concerning rumors about a relationship between defendant's wife and Viner. It is clear that Jackson was testifying on the basis of reports that he had heard from others. Such testimony was only remotely relevant, at best, as tending to establish a source of provocation, for defense counsel had already questioned defendant directly about rumors which had been communicated to him.
Finally, it is argued that defendant's direct examination was improperly restricted, thereby preventing the jurors from hearing significant evidence necessary to dispel any inculpatory inferences. To the contrary, our review of defendant's testimony reflects that the trial court allowed a most liberal direct examination of defendant. Defendant was allowed to detail any event having the slightest impact on his mental state, including his prior contacts with Viner; threats of violence made by Viner; rumors communicated to him about Viner and his wife; his prior contacts with law enforcement officers; his educational accomplishments and disappointments; his frustrated financial condition; the death of his father; and his prior unsuccessful attempt to gain elected office.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE:
Defendant contends that the trial court erred by permitting the prosecutor to ask defendant an irrelevant question.
The record reveals that defendant testified that he had some "blank spots" in his memory concerning the shooting. Thereafter, the prosecutor was permitted to ask defendant if he had told any doctors of his memory problem. Defense counsel's objection on the basis of relevance was overruled by the trial court.
The trial court correctly noted that the defense had opened the door to the State's question with testimony about defendant's psychiatric treatment and defendant's voluntary admission to Southeast Louisiana Hospital following the shooting.
The trial court is vested with discretion to control cross-examination and has wide discretion in determining the relevancy of evidence. See LSA-R.S. 15:275. Its ruling will not be overturned absent a clear abuse of this discretion. State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.1983), writ denied, 433 So.2d 711 (La.1983). We find no such abuse and, therefore, no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER SIX:
Defendant contends that the trial court erred when it permitted the State to present its rebuttal evidence.
LSA-R.S. 15:282 provides that the prosecution has a right to rebut evidence adduced by defendant. Such rebuttal evidence may be offered to explain, retell, counteract, or disprove facts given in evidence by an adverse party and may be used to strengthen the State's original case. State v. Aspin, 449 So.2d 49 (La. App. 1st Cir.1984). Determination of whether evidence is rebuttal and, hence, admissible, is addressed to the sound discretion of the trial court. State v. Aspin, 449 So.2d at 52.
Defendant urges that it was error to allow Dr. Albert DeVillier to testify on rebuttal regarding defendant's sanity because no evidence of insanity was placed before the jury by defendant.
Defendant pled not guilty and not guilty by reason of insanity. During his testimony, *634 defendant detailed that he suffered from "blank spots." Dr. William Bloom, a defense psychiatrist, testified that defendant presented an abnormal personality, a psychothymic disorder presenting a hypomanic personality. Dr. Bloom also stated that defendant presented a psychiatric history of being manic when first examined and referred to memory lapses and heavy drinking. Dr. James Denney another defense psychiatrist, testified that defendant exhibited paranoid trends and a diminished mental capacity. He also noted that he began treating defendant prior to the instant homicide. Although both defense experts testified under cross-examination that defendant was probably not legally insane at the time of the incident, Dr. Denney noted that he would have performed different diagnostic tests had he been asked to reach such a conclusion.
The trier of fact was free to accept or reject, in whole or in part, the testimony of any witness, including an expert. The rebuttal testimony of Dr. DeVillier was properly admitted for it explained, in an unequivocal fashion, that defendant was capable of distinguishing between right and wrong when he fatally wounded Daniel Viner.
Defendant also urges that it was error to allow Russell Crawford and Joe Di Gerolomo to testify on rebuttal because their testimony was unresponsive to issues raised by defendant. We disagree. Each testified briefly regarding his knowledge of Viner's general reputation for peaceableness. This testimony was offered to counter the vast amount of evidence introduced by defendant to evidence Viner's dangerous, aggressive character and prior violent threats against defendant.
For the foregoing reasons, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER SEVEN:
Defendant contends that the trial court erred when it recharged the jury on the aggressor doctrine, LSA-R.S. 14:21.
The record reveals that during deliberations the jury, through its foreman, requested further instruction on self-defense, including the aggressor doctrine. Such instruction had been included in the original charge to the jury without objection. However, defendant did object to inclusion of the aggressor doctrine as part of the reinstruction to the jury.
It is well established that the trial court may recharge the jury, or explain his charge verbally in greater detail, upon being requested by the jury, as long as he does not misstate the law. See LSA-C. Cr.P. art. 808; State v. Williams, 464 So.2d 1058 (La.App. 1st Cir.1985), writ denied, 468 So.2d 571 (La.1985).
The trial court shall charge the jury as to the law applicable to the case. LSA-C.Cr.P. art. 802(1). There was a possible factual basis presented by the testimony for the jury to determine whether or not to apply the aggressor doctrine. Defendant testified that he thought Viner was reaching for a gun and that he shot in self-defense. However, even if Viner had been armed, defendant was precluded from claiming justifiable homicide. He fired first and then fired again while Viner was running away. See LSA-R.S. 14:21, State v. Rankin, 465 So.2d 679 (La.1985).
For the foregoing reasons, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER EIGHT:
Defendant contends that the trial court erred by failing to order a presentence investigation.
The record reveals that defendant moved for a presentence investigation before sentencing. The motion was denied by the trial court. Louisiana Code of Criminal Procedure article 875 governs this issue. It makes clear that ordering of a presentence report is discretionary with the trial court. See State v. Wimberly, 414 So.2d 666 (La.1982).
In brief, defendant voices concern that without a presentence report prison officials and parole and pardon board officials *635 will be uninformed about what he sees as extenuating circumstances in this case. Such fears are ungrounded since a post sentence investigation is undertaken in major felony cases in which no presentence investigation is ordered. See LSA-C.Cr.P. art. 876.
The trial court imposed the statutorily mandatory sentence for conviction of second degree murder. Failure to order a presentence report did not constitute an abuse of discretion.
Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER ONE:
Defendant contends that the trial court erred by denying defendant's challenge for cause of prospective juror Althea Davenport and by denying defendant's subsequent request that she be replaced by an alternate juror.
During voir dire, defense counsel asked prospective juror Davenport if she would be able to accept the legal defense of insanity. Ms. Davenport initially indicated that she felt a defendant would be legally responsible for his actions if he "wanted to do them." Thereafter, defense counsel challenged Ms. Davenport for cause, urging that she was not willing to accept the law as given to her by the court. See LSA-C.Cr.P. art. 797(4).
The trial court then explained in detail the State's burden of proof as to the criminal act and the effect that a finding of insanity would have in determining criminal liability. When asked if she would be able to apply the law as explained, Ms. Davenport responded affirmatively.
We believe that the intial response of the prospective juror was brought about by a misunderstanding of the law. We are convinced that, after further questioning by the trial court, she was adequately rehabilitated. We, therefore, find no abuse of discretion in the trial court's refusal to dismiss for cause. See State v. Feet, 481 So.2d at 671-2.
The second dispute with respect to Ms. Davenport arose during the course of the trial. After the defense had rested, defense counsel asked the trial court to interview Ms. Davenport in chambers to determine if she had lied during voir dire examination about not being acquainted with Viner or his family. Defense counsel's foundation for the allegation was based upon observing Ms. Davenport's mother sitting in the courtroom near a person identified as Viner's aunt.
After conducting the interview as requested, the trial court reported that Ms. Davenport reaffirmed that she was not acquainted with any member of the Viner family and was able to perform her duties as a juror fairly and impartially. Based on these findings, the trial court refused to substitute an alternate juror for Ms. Davenport.
Louisiana Code of Criminal Procedure article 789 provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified. However, a juror may not be discharged unless there is a legal cause; i.e., death, illness or any other cause which renders a juror unable or disqualified to perform. An absence of this legal cause will lead to reversible error. LSA-C.Cr.P. arts. 798, 831.
Finding no legal cause to support defendant's request, the trial court did not err by refusing to replace Ms. Davenport with an alternate juror.
Thus, this assignment of error is without merit.[1]

ASSIGNMENT OF ERROR NUMBER TEN:
Defendant argues that the trial court erred by failing to grant defendant's motion for new trial based on the above referenced errors.
*636 For reasons more fully set forth in our treatment of defendant's other arguments urged on appeal, we find this assignment of error without merit.
For all these reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that defendant asked the court to interview Ms. Davenport in chambers and has not challenged the method used to interview her. See State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983).