783 So.2d 459 (2001)
STATE of Louisiana
v.
James PENDELTON.
No. 00-KA-1211.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2001.
*460 Paul D. Connick, District Attorney, Rebecca J. Becker, Terry Boudreaux, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, Counsel for state.
Gwendolyn Kay Brown, Baton Rouge, Counsel for defendant-appellant.
Court composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and JAMES C. GULOTTA, Pro Tempore.
McMANUS, J.
The defendant was charged with and convicted of first-degree robbery. The trial court sentenced the defendant to 35 years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. For the reasons that *461 follow, both the conviction and the sentence are affirmed.

STATEMENT OF THE CASE
The defendant, James Pendelton, was charged with first-degree robbery in violation of LSA-R.S. 14:64.1, to which he pled not guilty at arraignment. After trial on November 18, 1998, a 12-person jury returned a verdict of guilty as charged. On November 24, 1998, the trial judge sentenced the defendant to serve 35 years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.

FACTS
At trial, the evidence established that at approximately 9:00 a.m. on June 17, 1997, Darlene Cusanza, the executive director of Crime Stoppers, was robbed by a black man outside of the Hibernia National Bank in Harahan. Ms. Cusanza testified that she noticed a black man leaning against the side of the building when she drove into the parking lot that morning. Shortly after she parked and got out of her car, the man approached Ms. Cusanza and pushed her against her car. He shoved a hard object into Ms. Cusanza's side and said, "Give me the money." According to Ms. Cusanza, the object felt like a gun. Ms. Cusanza replied, "Here it is," and handed over her purse. The man ordered her to leave and she walked inside the bank. Once inside, she screamed that she had been robbed by a man with a gun and asked for someone to call the police.
Detective George Giron and Lieutenant Kevin Smith of the Jefferson Parish Sheriff's Office investigated the robbery. Detective Giron responded to the scene and interviewed Ms. Cusanza. Detective Giron testified that he also interviewed people who worked in office buildings near the Hibernia National Bank. At trial, these individuals testified that they had seen a black man whom they did not recognize in the parking lot that morning.
The defendant was ultimately arrested in Georgia under the name of Donald Brown. Lieutenant Smith and Detective Giron traveled to Georgia to secure the defendant's return to Louisiana. Upon returning to Louisiana, the police conducted a physical line-up. At the physical line-up and again at trial, Ms. Cusanza positively identified the defendant as the person who had robbed her on June 17, 1997.

ASSIGNMENT OF ERROR NUMBER ONE
As his first assignment of error, the defendant argues that the trial court erred in failing to remove an elderly juror after another juror informed the court that the elderly juror was apparently suffering from Alzheimer's Disease. By this assignment, the defendant claims the trial court abused its discretion in refusing to remove a 76-year old juror on the basis that another juror, who was an attorney, expressed concerns during trial regarding the elderly juror's memory. According to the defendant, the trial judge should have dismissed the elderly juror and replaced him with an alternate juror.
On the second day of trial, the trial judge held a conference in chambers. During the conference, which was transcribed and is part of the record, the trial judge related that the court's bailiff told him that Juror Bapps, who was an attorney, indicated there might be some "trouble" with another juror, Mr. Benefield. The trial judge stated that Mr. Bapps' specific concern was that Mr. Benefield was exhibiting the signs of Alzheimer's disease. In Mr. Bapps' opinion, Mr. Benefield seemed to suffer from short-term memory loss. With the consent of the prosecution and the defense, the trial *462 judge questioned Mr. Benefield regarding these concerns. The trial judge asked Mr. Benefield if he felt comfortable proceeding with the trial, to which Mr. Benefield responded affirmatively. Mr. Benefield was also questioned as to whether there was anything that prevented him from giving the defendant a fair trial, to which he replied "no ."
Thereafter, the defense requested the trial judge remove Mr. Benefield from the jury. Defense counsel argued that Mr. Bapps' opinion regarding Mr. Benefield's memory should be given credence because Mr. Bapps was an attorney, and because Mr. Bapps said he had known people with Alzheimer's disease. The prosecutor responded that there was no indication from the colloquy between Mr. Benefield and the trial judge that Mr. Benefield had any sort of memory or mental problems. The trial judge denied the defense's motion.
After the first witness is sworn, Louisiana Code of Criminal Procedure article 789 provides for the replacement of a juror with an alternate juror in the event a juror becomes unable to serve or is disqualified. State v. Derouselle, 99-3283 (La.4/28/00), 761 So.2d 1269, 1270 (per curiam); State v. Fuller, 454 So.2d 119, 123 (La.1984). Article 789 applies in this case because the trial was already underway when the issue regarding Juror Benefield was raised.
In State v. Ducksworth, 496 So.2d 624 (La.App. 1 Cir.1986), the First Circuit explained that a juror may not be discharged unless there is a legal cause such as death, illness or any other cause which renders a juror unable or disqualified to perform. In that case, the court held that the trial judge did not abuse his discretion in denying the defendant's motion to replace a juror with an alternate. After the defense had rested in Ducksworth, defense counsel requested that the trial judge interview a juror in chambers to determine whether she had lied during voir dire when the juror denied knowing the victim or his family. This request was based on defense counsel's observing the juror's mother sitting in the courtroom near the victim's aunt.
During the interview, the juror told the trial judge that she was not acquainted with any member of the victim's family and was able to perform her duties as a juror fairly and impartially. Based on these findings, the trial court refused to replace the juror with an alternate juror. Id. at 635. The Ducksworth court concluded the trial judge properly denied the defendant's motion, since there was no "legal cause" to support the defendant's request.
On the contrary, in State v. Derouselle, 97-2590 (La.App. 4 Cir. 10/20/99), 745 So.2d 767, the Louisiana Supreme Court concluded that the trial judge had properly removed a juror whom the judge concluded had failed to reveal a potential source of bias during voir dire examination. In that case, the record revealed that on the second morning of trial the trial judge stated that he had been told by a deputy that one of the jurors was crying because her "husband's" parole had been revoked. At that point, the juror's candor during voir dire was called into question, since the prosecutor recollected that he had asked every juror if a family member or close friend had ever been convicted of a crime and he did not recall that the juror responded affirmatively.
The juror was interviewed by the trial judge in chambers, and told the judge that her fiance's parole on a charge of aggravated rape had been "violated." When asked why she had not said anything about this when questioned during voir dire, she responded that she thought the question referred only to her. She admitted being *463 upset, but denied that she would hold the parole revocation against the State.
The Louisiana Supreme court concluded that "[u]nder these circumstances, removing the juror (if not expressly disqualifying her) because of doubts raised by her lack of candor under oath about her competency to serve impartially, and replacing the juror with the alternate, represented the proper exercise of the trial court's discretion." Id., 761 So.2d at 1270.
In the instant case, the allegations regarding Mr. Benefield's memory do not rise to the level of cause sufficient to remove a juror, as was the case in Derouselle. Rather, this case is more similar to Ducksworth, where the trial judge conducted an inquiry into allegations that the juror might be incompetent to serve, but later determined the allegations to be unfounded. In the present case, after personally speaking with Mr. Benefield, the trial judge obviously discounted Juror Bapps' opinion that Mr. Benefield was suffering from Alzheimer's disease. Based on the foregoing, we find no abuse of discretion in the trial judge's refusal to remove Juror Benefield and replace him with an alternate juror.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant argues that the trial court erred when it denied a motion for mistrial after the prosecutor referred in closing arguments to the defendant's failure to take the stand. The State responds that the trial judge properly denied the defendant's motion for mistrial because the remark did not directly or indirectly refer to the defendant's failure to testify.
The complained of statement made by the prosecutor is as follows:
Any question that you may have had about the pieces of the puzzle fitting together and whether he did it or whether he didn't should have been cleared up through her testimony. There should be no question in your mind but that the individual who dropped that black calendar book, who left his driver's license and the other identifying information that allowed the police to focus on James Pendelton as a suspect points to him. And all of that becomes crystal-clear when you consider the testimony of the victim in this case.
She was a little shaky. She was a little upset. She is a victim of a robbery. She had to come into a courtroom and testify. But she was clear in one critical regard: That that's the man that robbed me back on June 17th. No evidence presented to contradict that. And, of course, what I say
Defense counsel objected and requested a mistrial on the basis that the prosecutor's statement referred to the defendant's failure to testify, as well as the defense's right not to present any evidence. The prosecutor emphasized that he said there had been no evidence presented, not that the defense did not present evidence. The trial judge ordered the court reporter to read exactly what was said. The trial judge denied the defense motion, finding that the prosecutor's statement did not amount to a comment on defendant's failure to testify, and also admonished the jury that the State bore the burden of proving every element of the offense, and that the defense had no obligation to prove anything.
The defendant argues that the prosecutor's comments impermissibly referred to his failure to testify because the defendant was the only witness who could have impeached the victim's testimony, since there were no witnesses to the robbery.
*464 When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared upon motion of the defendant. LSA-C.Cr.P. art. 770(3); State v. Fullilove, 389 So.2d 1282, 1284 (La.1980). Where the reference is not direct, the reviewing court inquires into the remark's intended effect on the jury to distinguish indirect references to the defendant's failure to testify, which are impermissible, from general statements that the State's case is unrebutted, which are permissible. State v. Johnson, 541 So.2d 818, 822 (La. 1989).
An indirect reference requires a mistrial only if the comment was intended to draw the jury's attention to the failure to testify. State v. Hamilton, 92-1919 (La.9/5/96), 681 So.2d 1217. The test for determining the intent of such a statement is set forth in State v. Johnson, 541 So.2d at 822:
In cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, we have held that the prosecutor's argument did not constitute an indirect reference to the defendant's failure to take the stand ...
On the other hand, where the defendant is the only witness who could have rebutted the state's evidence, "a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify" and mandates a mistrial ...
In this case, the record supports a conclusion that the prosecutor's comment was a permissible general comment on the strength of the State's unrebutted evidence, rather than an impermissible reference intended to draw the jury's attention to the defendant's failure to testify. It is evident from the opening and closing statements presented by the defense that the defense theory in this case was misidentification. As part of its burden of proof, the State was required to demonstrate beyond a reasonable doubt that the defendant was the perpetrator of the offense. Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1054.
Prior to making the comment at issue, the prosecutor emphasized the State's burden of proof, including the element of identity. The prosecutor then summed up the State's evidence, which consisted primarily of Ms. Cusanza's positive identification of the defendant at the physical line-up and at trial, along with the circumstantial evidence placing the defendant at the scene. Therefore, when taken in the context of closing argument and against the backdrop of the evidence presented at trial, the prosecutor's remarks were an attempt to answer the defense's theory of misidentification. Based on the foregoing, we find that the trial judge properly denied the defense's motion for mistrial.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, the defendant argues that the trial court erred in imposing an excessive sentence. The defendant contends that his sentence is constitutionally excessive because the trial court lacked justification to impose the near maximum sentence of 35 years of imprisonment.
The record reflects that the defendant did not file a motion to reconsider sentence as required by LSA-C.Cr.P. art 881.1. However, defense counsel did orally *465 object to the sentence, but did not urge any specific grounds in support of his objection. Nevertheless, this Court has reviewed a defendant's constitutional challenge of his sentence even in the absence of an objection to the sentence or a motion to reconsider.[1] The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, merely limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95.
The Eighth Amendment of the United States Constitution and Article I, Section 20, of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212. In reviewing a sentence for constitutional excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. McCorkle, 708 So.2d at 1218-1219. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 708 So.2d at 1219.
The defendant was convicted of first degree robbery, a violation of LSA-R.S. 14:64.1, which is punishable by imprisonment at hard labor for not less than three years and for not more than 40 years, without benefit of parole, probation or suspension of sentence.
At the hearing on November 24, 1998, the prosecutor informed the trial judge that the defendant had two prior felony convictions, and that the State intended to file a habitual offender bill of information. The defendant did not dispute this. The trial judge then sentenced the defendant as follows:
Okay. Mr. Pendelton, the jury finding you guilty of first degree robbery, considering your background, considering the danger you pose to society, the Court sentences you to serve 35 years at hard labor without benefit of probation parole or suspension of sentence.
We conclude, based on the nature of the offense and the reasons stated by the trial judge, that the trial court did not abuse its discretion in imposing this sentence.

ASSIGNMENT OF ERROR NUMBER FOUR
As his final assignment of error, the defendant argues that he was denied the effective assistance of counsel at the time of sentencing in that his counsel failed to file a motion to reconsider the sentence. The State responds that the defendant was not prejudiced by counsel's failure to file a motion to reconsider because this Court has reviewed a sentence for constitutional excessiveness on appeal even in the absence of a motion to reconsider.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, if the record contains sufficient evidence to decide the issue, and *466 the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29. Thus, we now review the defendant's claim of ineffective assistance of counsel.
The Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. According to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffectiveness claim must show (1) that defense counsel's performance was deficient, and (2) that the deficiency prejudiced the defendant. To demonstrate prejudice under this test, the defendant must show that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland, 466 U.S. at 687, 104 S.Ct at 2064.
The defendant contends that trial counsel's failure to file a motion to reconsider sentence or to object to his sentence on specific grounds precludes him from challenging his sentence as excessive. However, this Court has recognized that defense counsel's failure to do so cannot "automatically be considered deficient performance." State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99), 738 So.2d 640. Moreover, in State v. Dammeron, 98-378 (La.App. 5 Cir. 9/29/98), 719 So.2d 1151, this Court held that the failure to file a motion to reconsider sentence does not prejudice a defendant when the court reviews the sentence for constitutional excessiveness.
In the present case, the defendant asserts that but for defense counsel's deficient performance, he could have challenged his sentence on appeal on specific grounds. While the defendant fails to identify any particular basis for challenging the sentence, it seems that his chief complaint is that he is precluded from raising the claim that the trial judge failed to comply with LSA-C.Cr.P. 894.1. Although the defendant is correct in that he is relegated to urging a claim of bare constitutional excessiveness due to the absence of a motion to reconsider sentence, remand for more complete compliance with LSA-C.Cr.P. art. 894.1 is not necessary when the record otherwise clearly illumines the sentencing choice. State v. Williams, 738 So.2d at 656. In the present case, the record reflects that the trial judge did articulate reasons to support the sentence. The judge considered the defendant's background in that the defendant had at least two prior felonies and found that the defendant posed a danger to society. Finally, the defendant does not articulate any facts to indicate that he would have received a lesser sentence but for defense counsel's failure to urge reconsideration of the sentence on specific grounds. Based on the foregoing, we find that the defendant has not met his burden to support a claim of ineffective assistance of counsel.

CONCLUSION
Based on all of the above, we find no abuse of the trial court's discretion in refusing to grant a mistrial or remove the complained-of juror, nor do we see any abuse of discretion in the sentence imposed. Finally, we find that the defendant has not proven a claim of ineffective assistance of counsel. The conviction and the sentence are therefore affirmed.
AFFIRMED.
NOTES
[1] State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051; State v. Ewens, 98-1096 (La.App. 5 Cir. 3/30/99), 735 So.2d 89.