| JAMES L. CANNELLA, Judge.
Defendant, Jon C. Ballay, appeals his conviction of issuing a worthless check, a violation of La.R.S. 14:71. We vacate the conviction and sentence and remand.
The Defendant was charged on October 7, 1997 with five counts of issuing worthless checks. On April 27 and 28, 1998, he was tried by a six-member jury on Count 5 and found guilty.[1]
After filing three motions for new trial that were denied, Defendant waived statutory delays and on July 10, 1998, was sentenced to serve two years at hard labor.[2]
|3On March 21, 1997, Debra Olsen (Olsen) was working as a cashier at Del-champs Supermarket on Veterans Boulevard in Metairie when she accepted an ASI Federal Credit Union (ASI) check numbered 1014 in the amount of $100.33. Olsen testified that the amount of the purchase was $80.33, but the customer wrote the check for $20 more in order to receive cash back. The Defendant’s name was the account holder. His address was listed as 1402 North Causeway Boulevard, Apartment 705, Mandeville, Louisiana. The check was signed “Jon C. Ballay.” In accordance with store policy, Olsen verified the customer’s identity by asking for his driver’s license. She wrote his license number (4486173) and his date of birth (7/8/59) on the check.
Michael Barbe (Barbe), the store manager at the Delchamps, testified that one of his duties is to deal with checks returned to the store for insufficient funds (NSF). When check number 1014 was returned by the credit union marked NSF, Barbe referred the matter to his company’s check security department in Mobile, Alabama. That department sent a certified letter to the Mandeville address listed on the check, asking that the Defendant pay the amount of the check. However, Barbe testified that the letter did not cause payment. He therefore filed an affidavit, dated June 20, 1997, with the Jefferson Parish District Attorney’s Office, instituting criminal charges. Two other letters were sent to the Defendant at the Mande-ville address informing him of the pending charges for two NSF checks and warning him to pay the amounts or criminal charges would be filed.
Darlene Stout (Stout), a supervisor with the Covington, Louisiana branch of the ASI, testified that she assisted the Defendant in opening a checking account |4on February 27,1997. As part of the application process, he presented a student identification card. Stout made a photocopy of the card and the Defendant completed a *955 membership card by filling in his name and address, Social Security number, and his driver’s license number (4486172).
The Defendant’s Social Security number was entered into the ASI computer authorization system, and Stout received an approval to open the account. She issued the Defendant some temporary checks and an automatic teller machine (ATM) card that day. Because the Defendant lived in Mandeville, the account was transferred to the ASI’s Mandeville branch.
Margaret Devillier (Devillier), a director of operations with ASI, testified that she supervises several branches of the credit union, including the Mandeville location. She stated that the Defendant opened his checking account with a $250 deposit. He made another deposit on February 28, 1997 of $335.00. No further deposits were made, but between March 3 and March 27, 1997, 33 checks were written on the account. There were also 13 ATM withdrawals. The account became overdrawn, as illustrated by account statements for February and March. The Defendant was sent a notice each time a check was returned for lack of funds.
Check number 1014, written to Del-champs on March 21, 1997, was presented to the credit union for payment on March 26, 1997. The account had a negative balance of $678.38 on that date. The $100.33 check was returned to Delchamps due to insufficient funds. The ASI closed the Defendant’s account on March 27, 1997. Devillier testified that the Defendant never contacted ASI to |sattempt to straighten out the problem, nor did he ever report his checkbook stolen.
Nicholas Molligan (Molligan), an expert in forensic document examination, testified that he examined the signatures on the Defendant’s ASI checking account application, check number 1014, and the Defendant’s Louisiana driver’s license. Molligan found several points of comparison among the signatures. He testified that the signatures were all made by the same person.[3]
Mitchell Fontenot (Fontenot), Jessica Haggerty (Haggerty), and Muriel Sargent (Sargent) testified on the Defendant’s behalf.[4] Fontenot lived with the Defendant at 1402 North Causeway Boulevard for three weeks in February of 1997. He claimed that the Defendant’s apartment was burglarized and the Defendant’s checkbook was stolen at that time. Hag-gerty testified that she visited the Defendant’s apartment around the time of the alleged burglary, and it looked as if it had been ransacked.
Fontenot further testified that, in mid-March of 1997, he was approached by Gene Stalen (Stalen), who had some of the Defendant’s stolen checks. He claimed that Stalen wanted Fontenot to help him cash the cheeks, but Fontenot refused. Fontenot testified that he did not know whether Stalen had actually used any of the Defendant’s checks.
| ^Sargent testified that she was in a hotel room on Airline Highway in March of 1997, where she met someone for a “crack date.” Sargent claimed that, while in this *956 unknown person’s room, she saw a book of checks with the Defendant’s name on them.
On appeal, the Defendant contends that the trial judge erred in failing to grant a mistrial when the State commented in closing argument that he did not rebut the evidence because he failed to take the stand to testify. The Defendant contends that the comment required a mandatory mistrial.
The Defendant objects to the following comments made by the prosecutor:
Well, interestingly enough if their beef is with Delchamps, then you know who the only person is today that’s out of money, Delchamps. Delchamps is the people that didn’t get their $100.33 back. Delchamps is the real victim here. If he doesn’t have a beef with Delchamps, then why didn’t he go in Delchamps and pay them their $100.33? Why didn’t he go make good the check, he knows he wrote it, he knows why we’re here, why didn’t he go pay those people their money? You heard the manager say we never got money from him, we never got our money back.
They never, Mr. Doyle [defense counsel] argues that they never got, that he never got a statement notifying of his account. Well, never heard anybody testify that he never got that, he didn’t take the stand and say I didn’t get any statements, we don’t know that.
He’s trying to argue the things that never came from that witness stand and that’s smoke that he’s blowing at you, hoping that you’ll bite into it.
(R., pp. 297-298). (Emphasis supplied).
Article 770 of the Louisiana Code of Criminal Procedure provides:
Upon motion of a Defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, • or a court official, during the trial or in argument, refers directly or indirectly to:
Jl * * *
(3) The failure of the Defendant to testify in his own defense.
* * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the Defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The State contends that the Defendant failed to preserve his right to appellate review of this issue because he did not object to the prosecutor’s remarks or move for a mistrial during the prosecutor’s argument. However, the defense is not required to interrupt opposing counsel during an opening statement or closing argument in order to preserve his objection for appellate review. A motion for mistrial is timely if made at the conclusion of the argument. State v. Jones, 99-1185, p. 14 (La.App. 5th Cir.9/22/00), 769 So.2d 708, 716.
The following is what was said on the record:
Mr. Doyle [defense counsel]:
Your honor, may I approach, before you charge the jury, please?
Mr. Doyle:
My investigator says that he heard Joan [the prosecutor] say, comment on my client not taking the stand.
The Court:
No, that’s not what she said. What she said was, she was commenting on what you said.
(R., p. 300).
The judge then issued the jury instructions, and the jury retired to deliberate. *957 The Defendant again raised the issue of improper comments by |sthe prosecutor:
Mr. Doyle:
Your Honor, my client is contending that Ms. Benge made a comment about him not taking the witness stand.
The Court:
No, she made a comment about you saying that basically the evidence has shown that it was proven that he never received a statement. What she said was that when Mr. Doyle is the one who said that, no evidence was presented on that issue, that’s what she said, okay. Thank you, Court stands in recess.
(R., p. 301).
The question before us is whether that exchange between defense counsel and the trial judge was a timely objection. We find that it was a timely objection. Twice Defendant attempted to raise the issue. Further, defense counsel’s comments to the trial judge were specific enough to constitute a valid objection as contemplated by La.C.Cr.P. art. 841.[5] In addition, the record reflects that the Defendant raised the issue in three motions for new trial, each of which the trial court denied. Thus, we find that the Defendant is entitled to appellate review of this alleged error.
The Defendant objected to the improper remarks by the prosecution, but he did not specifically ask for a mistrial or admonition. Nevertheless, when an objeetion to the prosecutor’s comments is overruled, the Defendant is not required to make what would amount to a useless motion for a mistrial or admonition to preserve his rights on appeal. State v. Johnson, 98-281, p. 4 (La.App 5th Cir.9/29/98), 719 So.2d 1141, 1144. Here, the judge’s comments were a tacit denial of the Defendant’s objection to the prosecutor’s reference that he did not take the stand. Thus, the Defendant was not required to make any further motions in order to preserve his right to appeal.
La.C.Cr.P. art. 770(3) prohibits both “direct” and “indirect” references to a Defendant’s failure to testify at trial. Where a reference to the Defendant’s failure to take the stand is direct, a mistrial should be declared, and it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from the Defendant’s silence. State v. Mitchell, 2000-13 (La.2/21/01); 779 So.2d 698, 701; State v. Johnson, 541 So.2d 818, 822 (La.1989), (citing State v. Fullilove, 389 So.2d 1282, 1284 (La.1980)). As stated in Mitchell, 779 So.2d at 701, “The purpose behind art. 770(3)’s prohibition against such prose-cutorial comment is to protect the Defendant’s Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the Defendant has not testified on his own behalf.” See also: Fullilove, 389 So.2d at 1283.[6]
*958 In this case, the prosecutor’s comment that “he [Defendant] did not take the stand” was a direct reference to the Defendant’s failure to testify at trial. Because the comment was a direct reference to Defendant’s failure to take the stand, a mistrial was mandated without further analysis of the prosecutor’s intent. Mitchell, 779 So.2d at 701; Johnson, 541 So.2d at 822; Fullilove, 389 So.2d at 1284.
Accordingly, the Defendant’s conviction and sentence are vacated and set aside. The case is remanded for further proceedings.
CONVICTION AND SENTENCE VACATED; CASE REMANDED.
EDWARDS, J., dissents with reasons.

. On May 1, 1998, the state dismissed the remaining four counts in the bill of information.

. Defendant made an oral motion for appeal. On October 6, 2000, he filed a motion for out-of-time appeal. The motion was granted that day. On January 18, 2001, Defendant filed an application for post conviction relief for purposes of requesting an out-of-time appeal. The trial judge issued an order on March 29, 2001, dismissing Defendant’s application "without prejudice", on the grounds that Defendant already had an appeal pending in this Court.

. The Defendant did not dispute that he wrote the check to Delchamps. In fact, prior to Molligan's testimony, defense counsel offered to stipulate that the signature on the check was the Defendant's. (R., p. 216).

. The Defendant's three witnesses had various convictions. Fontenot was serving jail time for armed robbery at the time of trial and Haggerty had convictions for receiving stolen property, crime against nature, and possession of cocaine. Sargent had been convicted of possession of cocaine, prostitution and possession of stolen property.

. La.C.Cr.P. art. 841A provides that, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.” (Emphasis supplied).

. When the reference is not direct, the reviewing court examines the remarks in order to distinguish indirect references intended to call attention to defendant's failure to testify, which are not permissible, from general statements that the states case was not rebutted, which are permissible. State v. Hampton, 98-0331, p. 10 (La.4/23/99), 750 So.2d 867, 878, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Pendleton, 00-1211, p. 11 (La.App. 5th Cir.3/14/01), 783 So.2d 459, 464. A mistrial is mandated *958 where the prosecutor refers to the evidence as uncontroverted, and the defendant is the only witness who could have rebutted the state’s evidence. Johnson, 541 So.2d at 822; Pendleton, 783 So.2d at 464 (citing Johnson).