957 So.2d 185 (2007)
STATE of Louisiana
v.
Corey A. EDWARDS.
No. 06-KA-643.
Court of Appeal of Louisiana, Fifth Circuit.
March 27, 2007.
*187 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas Butler, Frank Brindisi, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Katherine M. Franks, Louisiana Appellate Project, Abita Springs, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Defendant, Corey Edwards, appeals his conviction on a charge of aggravated battery, a violation of La. R.S. 14:34. For the reasons that follow, we affirm.
Defendant was charged by bill of information with aggravated battery. At his arraignment, defendant pled not guilty. After a two-day trial, a six-person jury found him guilty as charged. He was subsequently sentenced to seven years at hard labor with credit for time served. Defendant now brings this timely appeal.
Facts
While driving in Metairie on November 4, 2005, defendant's wife, Chantel Edwards, lost control of the family's Jeep Grand Cherokee, causing it to veer off the road and crash through a wrought iron fence at Bergeron Motors auto dealership. Frank M. Keen, III, testified at trial that he was working as a service manager at *188 the dealership at that time. He heard a loud noise and went to investigate. He saw that the Jeep had torn through the fence, run over a concrete bumper in the business' parking lot, and hit a vehicle belonging to the dealership. A customer's vehicle was damaged by flying fence parts. At Mr. Keen's request, Ms. Edwards turned off the vehicle's engine and exited. Mr. Keen determined that Ms. Edwards was unharmed, and then he called 9-1-1 to report the accident.
Ms. Edwards re-entered the Jeep and attempted to drive it off the premises. Mr. Keen testified that he told her she could not leave the scene before police arrived. He then placed a second call to 9-1-1. At that point defendant, Corey Edwards, approached Mr. Keen and shouted, "Who's the motherf* * *er who says I can't move my car?" Mr. Keen told defendant he could not move the vehicle until the police arrived. According to Mr. Keen, defendant replied, "I'm going to run over your f* * *ing a* *."
Defendant got into the Jeep, started the engine, and put the vehicle in reverse. Mr. Keen, who was standing at the left rear corner of the Jeep, did not notice defendant's actions until the vehicle began to move. He attempted to get out of the way, but the Jeep was moving too fast. Mr. Keen testified the vehicle hit him between his chest and his knees and he was knocked backwards a considerable distance onto his elbows. The Jeep continued towards him as he lay on the ground. Finally, defendant stopped the vehicle, put it in forward gear, and drove it onto the street.
Mr. Keen testified he sustained bruising down his right side from the impact. At the time he feared he had suffered damage to the site of his recent bladder cancer surgery. He was taken by ambulance to a hospital, but his injuries were not permanent.
Goldie Collins, another employee of Bergeron Motors, witnessed the confrontation. She testified that when defendant arrived at the accident scene, he started cursing at Mr. Keen. Defendant told Mr. Keen that if he did not move from behind the Jeep, he would run over him. Defendant then got into his vehicle and drove it in reverse. According to Ms. Collins, the Jeep was going so fast that Mr. Keen  who was standing one or two feet behind the vehicle  could not get out of the way. The impact threw Mr. Keen up and back about ten feet, into the street.
Bergeron employee Donald Ganucheau testified he was eighty feet away from the accident site when he heard someone yell, "Who says I can't move my motherf* * *ing car." Mr. Ganucheau approached the scene and found defendant screaming about moving his car. He saw defendant back the Jeep into Mr. Keen while traveling at fifteen to twenty miles per hour. Defendant pulled the Jeep out onto the street, and Mr. Ganucheau grabbed the vehicle's door. At that point police arrived, and defendant pulled his vehicle over to the side of the road.
When Deputy Aaron Verrette of the Jefferson Parish Sheriff's Office arrived at the scene, Mr. Keen was lying in the street and defendant was still inside of his Jeep. Deputy Verrette testified that defendant told him his wife had been involved in an accident with the Jeep, and he was just trying to move the vehicle. After witnesses told the officer defendant had attempted to leave the scene, defendant became extremely angry and began cursing. Deputy Sam Minnis placed defendant under arrest.
Defendant testified at trial that he was upset with his wife when he learned about the accident. Because the Jeep was the *189 family's only vehicle, he had to enlist a neighbor, Brian Darby, to drive him to the scene. Defendant said he did not recognize Mr. Keen in court, but he recalled an older man standing at the back of the Jeep. He told the man he wanted to move his vehicle so he could see the damage. The man told him he could not do so. Defendant testified he told the man it was his "M fing car," and he wanted to move it to check the damage.
Defendant testified that he got into his vehicle and put it in reverse. He had backed up less than a foot when he heard Ms. Edwards say "stop." He then saw Mr. Keen on the ground, approximately one foot behind the Jeep. Defendant said he did not intentionally hit Mr. Keen with his vehicle. He assumed Mr. Keen would move from behind the Jeep. Defendant said Mr. Keen must have been in his "blind spot," because he did not see him when he checked his rearview mirrors. Defendant denied having told Mr. Keen he was going to run over him.
Defendant's neighbor, Mr. Darby, testified on his behalf. Mr. Darby said an older white man from the dealership approached defendant to talk to him. He heard defendant say he was going to move his Jeep. He heard the vehicle start, and then he saw the older man fall to the ground behind the Jeep.
Assignments of Error
Defendant complains in his first assignment of error that the evidence at trial was insufficient to support his conviction for aggravated battery. Defendant does not deny running into Mr. Keen with his vehicle. He argues the State failed to prove he had the necessary criminal intent to complete the offense; and that he was, at most, criminally negligent. The State responds that it proved defendant intentionally used force or violence against Mr. Keen by employing his vehicle as a dangerous weapon.
The standard of review for determining the sufficiency of the evidence is whether, viewing both direct and circumstantial evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). An appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events leading to the prosecution. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. Rather, the reviewing court must evaluate the evidence in the light most favorable to the State, and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof beyond a reasonable doubt.
La. R.S. 14:34 provides that "[a]ggravated battery is a battery committed with a dangerous weapon." La. R.S. 14:33 defines battery, in part, as "the intentional use of force or violence upon the person of another." In order to convict a defendant of aggravated battery, the State was required to prove that 1) the defendant intentionally used force or violence against the victim, 2) the force or violence was inflicted with a dangerous weapon, and 3) the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28.
A dangerous weapon includes "any . . . instrumentality, which, in the *190 manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3). An instrumentality may be considered a dangerous weapon not only because of the inherent danger it possesses, but also because it is used in a manner likely to cause death or great bodily harm. State v. Perkins, 99-1109 (La.App. 5 Cir. 4/25/00), 762 So.2d 67, 71, writs denied, 00-2745 (La.6/15/01), 793 So.2d 1240 and 01-1167 (La.6/15/01), 793 So.2d 1244. An automobile used in a manner calculated to produce or likely to produce death or great bodily harm has been found to be a dangerous weapon. State v. Trahan, 416 So.2d 65, 68 (La.1982). Neither the infliction of serious bodily harm nor the intent to inflict serious injury is required for aggravated battery to have been committed. State v. Perkins, supra. Aggravated battery does, however, require physical contact, whether injurious or merely offensive. Id.
Aggravated battery requires proof of general intent, i.e., a showing that "`the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.'" State v. Howard, 94-0023 (La.6/3/94), 638 So.2d 216, 217, quoting La. R.S. 14:10(2). General intent may be proved by evidence that the defendant did the acts which have been declared criminal. Howard, supra. The fact that a defendant does not specifically intend the greater degree of harm to the victim does not prevent the jury from taking into account the reasonably foreseeable consequences, which aggravate the seriousness of the battery offense, in assessing the defendant's culpability. Id.
Defendant argues he did not know Mr. Keen was behind his vehicle when he put it in reverse, and thus did not have the requisite intent to complete an aggravated battery. However, the State's witnesses testified defendant was belligerent with Keen and verbally threatened to run over the victim with the Jeep. Donald Ganucheau and Goldie Collins both testified that Mr. Keen stood behind the vehicle throughout the incident. Ms. Collins said Mr. Keen was standing one or two feet behind the Jeep when defendant threatened him, and Keen did not move from that place before defendant backed into him. According to Ms. Collins, the Jeep was moving so fast that Mr. Keen did not have time to move out of the way.
The trier of fact in a criminal trial is free to accept or reject, in whole or in part, the testimony of any witness. State v. Evans, 00-1766 (La.App. 5 Cir. 4/11/01), 786 So.2d 781, 784, writ denied, 01-1390 (La.4/12/02), 812 So.2d 664. The jurors in this case apparently found the State's witnesses to be more credible than defendant. In any case, the law did not require that the jury find defendant intended to inflict serious injury in order to find him guilty of aggravated battery. Viewing the evidence in the light most favorable to the prosecution, we find a rational juror could conclude the State proved the essential elements of aggravated battery beyond a reasonable doubt.
By his second assignment of error, defendant complains his seven-year sentence is excessive, arguing the trial court failed to consider mitigating circumstances such as his minimal criminal record, the negligible injuries suffered by the victim, the fact that he was the sole support of his wife and several children, and the excessive stresses that played on people such as him who suffered loss in the wake of Hurricane Katrina. Defendant further complains that the trial court failed to articulate his reasons for sentencing as prescribed by La.C.Cr.P. art. 894.1. Defendant asks this Court to vacate his sentence and remand *191 for re-sentencing, ordering the trial court to follow the provisions of that article.
In his third assignment of error, he argues his trial counsel was ineffective in failing to file a motion to reconsider sentence.
The record shows defendant did not make or file a motion to reconsider sentence stating specific grounds, as provided under La.C.Cr.P. art. 881.1 B. He is therefore entitled only to a bare review of his sentence for constitutional excessiveness. State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243. Defendant complains his attorney's omission prevents him from receiving meaningful review of his sentence for excessiveness.
Claims for ineffective assistance of counsel are most appropriately addressed through application for post-conviction relief in order to afford the parties an adequate record for review. State v. Williams, 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 793, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666. But an appellate court can address the issues if the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal. State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29, 31, cert. denied, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998); State v. Pendelton, 783 So.2d at 465-466. In this instance we find the record contains sufficient evidence for us to decide the issue.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. Courts apply a two-pronged test in assessing a claim of ineffective counsel. A defendant must show his attorney's performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055. An error is prejudicial if it was so serious that it deprived the defendant of a fair trial, or "a trial whose result is reliable." Strickland, supra; State v. Serio, 94-131 (La.App. 5 Cir. 7/1/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. In order to show prejudice, a defendant must demonstrate that but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, supra.
This Court routinely reviews sentences for constitutional excessiveness despite the defendant's failure to file a timely motion to reconsider sentence. State v. Williams, 786 So.2d at 794. Moreover, this Court has held that a defendant is not prejudiced by his defense counsel's failure to object to a sentence in the trial court when the sentence is reviewed for constitutional excessiveness on appeal. Id. We find, therefore, that defendant's ineffectiveness of counsel claim has no merit.
We now turn to defendant's excessive sentence claim. The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. In reviewing a sentence for excessiveness, the reviewing court must consider the crime and punishment in light of the harm to society and *192 gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La. 1992).
Factors to be considered in reviewing a defendant's sentence are the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by the same court and other courts. State v. Knightshed, 00-1410 (La.App. 5 Cir. 3/28/01), 783 So.2d 501, 504-505. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id.; State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879-880.
Defendant's sentencing exposure for aggravated battery was imprisonment with or without hard labor for not more than ten years, a five thousand dollar fine, or both. La. R.S. 14:34. Defendant received a mid-range sentence, and the trial court did not impose a fine.
Although the trial court did not order a pre-sentence investigation, it was clearly aware of defendant's background and criminal history. Defendant testified at trial that he was convicted of burglary in 1991 at the age of seventeen, and that he pled guilty to a "peeping tom" offense in 2004. The prosecutor commented at the time of sentencing that the State would refrain from filing a habitual offender bill of information against defendant. Defendant further testified that he lived with his wife  who was pregnant at the time of trial  and his five children. Defendant testified he owned his own trucking business, and his job was the family's sole source of income. Following the jury's verdict, defendant made the trial court aware that his wife would not be able to support the family by herself; that she and the children would probably have to move in with her mother.
Defendant further complains that the trial court failed to consider the fact that the victim, Mr. Keen, did not suffer serious or permanent injuries from the incident. Moreover, defendant suggests that Mr. Keen in fact "decided not to move from behind the Jeep" to avoid injury. The record shows the trial court was fully aware of the nature and extent of Mr. Keen's injuries. The victim testified that he suffered bruising down his side as a result of the impact, and that he felt better after about four days. As to the question of whether Mr. Keen chose to expose himself to injury, the testimony of the victim and other State witnesses indicates the Jeep was traveling so fast in reverse that he did not have time to move. We recognize that, despite the fact that Mr. Keen apparently suffered no permanent injury from the incident, the damage could have been considerably worse. This is particularly so because Mr. Keen was recovering from bladder cancer.
Compare State v. McGee, 37,919 (La. App. 2 Cir. 12/10/03), 862 So.2d 452, in which the defendant was convicted of aggravated battery and received a sentence of six years. The reviewing court found the defendant acted in an egregious manner by intentionally driving his van into the victim at a high rate of speed, dragging him under the van, and then leaving the scene. The court commented that any reasonable person would find the defendant's actions abhorrent, and noted that defendant could have received a ten-year sentence.
As was the case in McGee, defendant could have received a ten-year sentence, but instead received a mid-range sentence. When defendant's crime and punishment are viewed in light of the harm done to society, the seven-year hard labor sentence does not shock the sense of justice. We do *193 not find that the trial court abused its broad discretion in imposing a seven-year sentence.
As defendant points out, the trial judge did not articulate reasons for sentencing. La.C.Cr.P. art. 894.1 C requires the trial court to "state for the record the considerations taken into account and the factual basis therefore in imposing sentence." When the trial judge does not articulate reasons for his sentencing choice, but the record demonstrates an adequate factual basis to support the sentence imposed, a remand for re-sentencing is unnecessary, even where there is not full compliance with Article 894.1. State v. Clemons, 01-1032 (La.App. 5 Cir. 2/26/02), 811 So.2d 1047, 1054, writ denied, 02-0866 (La.11/22/02), 834 So.2d 972, cert. denied, 538 U.S. 1063, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003). A trial court's articulation of the factual basis for the defendant's sentence, not rigid or mechanical compliance, is the goal of La.C.Cr.P. art. 894.1. State v. Crawford, 05-494 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 670.
Defendant argues his trial counsel was ineffective in that he failed to present the following mitigating circumstances to the court at the time of sentencing: 1) defendant had no significant criminal history, 2) defendant was only thirty-one years old at the time of the offense, 3) defendant was gainfully employed, and was the sole support of his wife and five children, 4) defendant's wife was expecting his sixth child, 5) defendant was an involved father, and 6) defendant had rejected a pre-trial plea bargain out of concern for the effect his imprisonment would have on his family. Defendant further complains that his trial counsel failed to object when the trial judge ordered his immediate imprisonment and rejected defendant's request that he be allowed time to help his wife move in with her mother.
As we noted above, the trial judge was made aware of nearly all of defendant's mitigating circumstances through defendant's testimony. The only mitigating factor not expressed during trial or at sentencing was the rejected plea offer. Even so, defendant informed the trial court following trial that he desperately needed time to take care of his wife and children before beginning his sentence. Defendant does not show how counsel's failure to reurge those factors at the time of sentencing was deficient. Defendant also fails to show how he was prejudiced by counsel's failure to act. See, Strickland v. Washington, supra. We do not find that defendant's trial counsel was ineffective.
In his fourth and final assignment, defendant, who is African-American, contends the trial court erred in denying his Batson objections to the State's discriminatory use of peremptory challenges to pick an all-white jury. Defendant specifically argues that potential jurors Michael Tucker and Katherine Gonsoland were dismissed by prosecutors because they are African-American.[1] He maintains that the "race neutral" reasons the State gave for excusing those potential jurors were specious, because some of the non-African-American jurors accepted by the State were similarly situated and gave answers during voir dire that tracked those of the excused jurors. In support of this argument, defendant cites the recent Supreme Court holding in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). The State responds that the trial *194 court did not err in determining there was no showing of purposeful discrimination.
The United States Supreme Court held in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that an equal protection violation occurs when a party uses a peremptory challenge to exclude a prospective juror on the basis of race. If the challenger makes a prima facie showing of discriminatory strikes, the burden shifts to the opposing party to offer racially-neutral explanations for the challenged juror. This second part of the process does not require the State to give an explanation that is plausible, or even persuasive; so long as it is not inherently discriminatory. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam).
If a race-neutral reason is given, the trial court must then decide whether the challenger has proven purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. at 1724. This third and final step in the Batson analysis involves an examination of the credibility of the State's "race-neutral" reasons, but the ultimate burden of persuasion as to racial motivation in exercising a peremptory challenge rests with, and never shifts from, the opponent of the challenge. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771; Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).
The Batson test is codified in La.C.Cr.P. art. 795 C, which provides:
No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
Whether there has been intentional racial discrimination is a question of fact. State v. Scott, 04-1312 (La.1/19/06), 921 So.2d 904, 921, cert. denied, ___ U.S. ___, 127 S.Ct. 137, 166 L.Ed.2d 100 (2006). The trial court's evaluations of discriminatory intent are to be accorded great deference on review, and should not be reversed unless they are clearly erroneous. State v. Snyder, 98-1078 (La.9/6/06), 942 So.2d 484, 488.
In Miller-El, the United States Supreme Court, in the context of a challenge of an African-American prospective juror, held the defendant had established a case of purposeful discrimination under Batson, and was entitled to federal habeas relief. In so holding, the high court observed, "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step." Miller-El, 545 U.S. at 241, 125 S.Ct. at 2325. The Louisiana Supreme Court has found that Miller-El does not alter the standard of review for Batson claims on direct appeal. State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791, 796; State v. Snyder, supra. This is evidenced by the recent opinion in Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 973-974, 163 L.Ed.2d 824 (2006), in which the Supreme Court restated and employed the three-step Batson analysis.
The record shows the prosecution and the defense both used all of their six allotted peremptory challenges during jury selection. After all six jurors had been *195 seated, but before the alternate juror was selected, defense counsel made a Batson challenge. The prosecutor commented that one of the seated jurors was African-American. Defense counsel responded, "She's Spanish, she's not black." The trial judge did not comment on what race he believed the juror in question to be. In point of fact, aside from comments made by the attorneys, there is no indication in the record as to the race of any of the potential jurors.
The trial judge instructed the prosecutor to give race-neutral reasons for his use of peremptory challenges to excuse African-Americans from the jury, beginning with Ms. Gonsoland.[2] The prosecutor stated, "Judge, I think Ms. Gonsoland said she has two sons, twenty-seven and twenty-five, which she may identify with the Defendant." As to Mr. Tucker, the prosecutor said, "Tucker sat there the whole time and very seldom made eye contact with me, Judge. He had his arms folded the whole time, Judge, and he made very little eye contact with me, and I didn't feel like I was bonding, at all." As to those two jurors, the judge ruled the State had articulated race-neutral reasons sufficient to justify peremptory challenges. Defense counsel objected to the judge's ruling. Since the judge found the State's explanations were race-neutral, defendant's challenge did not go beyond step two of the Batson analysis.
We do not find the trial court's rulings clearly erroneous. The fact that a potential juror has a child the same age as the defendant (and that he might, therefore, sympathize with the defendant) has been found to be an acceptable race-neutral reason for using a peremptory challenge. State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, 1084-1085, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005). Similarly, the courts have held a potential juror's body language or failure to make eye contact to be an acceptable race-neutral explanation. State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, 559-560, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 375, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Parker, 04-1017 (La.App. 5 Cir. 3/29/05), 901 So.2d 513, 523, writ denied, 05-1451 (La.1/13/06), 920 So.2d 235.
The trial judge is in the best position to determine whether a race-neutral explanation is offered in good faith, or is a subterfuge for racial bias. State v. Parker, 901 So.2d at 524; State v. Jackson, 03-0417 (La.App. 5 Cir. 10/28/03), 860 So.2d 134, 137, writ denied, 03-3506 (La.4/8/04), 870 So.2d 269. In this case, nothing in the record rebuts the determination of the trial court that the State's expressed reasons for exclusion were non-pretextual and legitimate grounds for exercise of the challenges against the two African-American jurors at issue.
Defendant argues that the traits upon which the State claimed to base its peremptory challenges of the two African-American jurors also applied to white jurors who were accepted by the State, evidencing the State's discriminatory intent. He asks this Court to do a comparative *196 analysis of those jurors such as the one the Supreme Court performed in Miller-El. We decline to perform such a review here, first, because the Miller-El analysis pertains to the third step of Batson, which is not at issue here. See, State v. Draughn, 05-1825, p. 12 (La.1/17/07), 950 So.2d 583. Secondly, in the instance of such a review, the burden is on the defendant to provide support for his argument that there was purposeful discrimination. Defendant does not offer such support here.
We have reviewed the record for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). We find none which merit consideration.
For the above discussed reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record shows that Dinah Cooper, another prospective juror who is apparently African-American, was initially excused by the State, but was thereafter accepted as an alternate on defendant's jury.
[2] The trial court addressed the second Batson step without ruling on whether defendant met his burden as to the first Batson step. When the trial judge does not rule on whether a defendant met his burden to establish a prima facie case of racial discrimination, but rules on the ultimate question of intentional discrimination after the State offers a race-neutral explanation for the peremptory challenges, the issue of whether defendant made a prima facie showing is moot. State v. Robinson, 04-964 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1122.